JESSE FRENCH PIANO & ORGAN CO. v. GIBBON.   (No. 8257.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 6, 1915. Rehearing Denied Dec. 11, 1915.)

1. ACTION ⟐⇒27—NATURE AND FORM.

Where the buyer of a piano sued the seller to recover the purchase price, alleging that the instrument, which the seller's authorized agent had represented to be perfect in every respect, was worthless, and that he, the buyer, had been "swindled and cheated out of $700," for which he prayed judgment, the action sounded in tort for fraud and deceit, and damages for fraud were recoverable, since fraud is any act, omission, or concealment involving a breach of legal duty, trust, or confidence, justly reposed, injurious to another, and need not be alleged specifically, but may be inferred from facts pleaded.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 160–195; Dec. Dig. ⟐⇒27.

For other definitions, see Words and Phrases, First and Second Series, Fraud.]

2. FRAUD ⟐⇒34 — CONDITIONS PRECEDENT — RETURN OF CONSIDERATION.

Where plaintiff purchased a piano in consequence of false representations of the seller's authorized agent that it was perfect in every respect, which representations were innocently made, plaintiff could retain the piano and bring his action for the fraud practiced upon him, it not being necessary for him to return the instrument or even offer to return it, in order to entitle him to recovery of the purchase price.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 29; Dec. Dig. ⟐⇒34.]

3. EVIDENCE ⟐⇒181—BEST EVIDENCE—WRITTEN WARRANTY—PREDICATE FOR INTRODUCTION.

In an action by the buyer of a piano against the seller for fraud of the latter's agent in inducing the purchase of the instrument by misrepresentations that it was perfect in every respect, the action of the court in excluding parol testimony as to the contents of a manufacturer's catalogue containing the manufacturer's warranty, upon which the seller claimed the sale was made, was proper, in the absence of proper predicate accounting for the nonproduction of the catalogue itself and any written warranty in the terms of the manufacturer's warranty claimed by the seller to have been given by it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 600; Dec. Dig. ⟐⇒181.]

4. EVIDENCE ⟐⇒417—PAROL EVIDENCE AFFECTING WRITING.

In an action by the buyer of a piano on account of the misrepresentations of the seller's agent, where there was no evidence in the record as to what the written contract of sale was, or that there was a written contract of warranty, which the seller pleaded but did not prove, the action of the court in permitting plaintiff to prove the terms of the alleged misrepresentations of the agent was not improper as varying by parol testimony the terms of the alleged written contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1874–1899; Dec. Dig. ⟐⇒417.]

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by J. M. Gibbon against the Jesse French Piano & Organ Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Short & Field, of Dallas, for appellant. McMurray & Gettys, of Decatur, for appellee.

BUCK, J. Suit was filed by appellee as plaintiff, and in his original petition he alleged that he had purchased from appellant a certain piano for which he had agreed to pay $675 as follows: A secondhand piano valued at $75, $100 in cash, and executed five notes in the sum of $100 each; that all of said agreed price, including the notes, had been fully paid. He further alleged that defendant's agent, in making the sale and in order to induce plaintiff to purchase the piano, had represented that the instrument "was a perfect, high-grade piano in every respect, including material, workmanship, tone, action, finish and in every respect," and had warranted and guaranteed it so to be, and guaranteed said piano against all defects of workmanship or materials for a period of five years; that the agent, who was duly authorized to act for and bind the defendant company in the transaction, agreed with plaintiff that if the latter would pur-

chase the piano and it should prove, after it was delivered and installed, not to be perfect in every respect, that the defendant would replace said piano so proven to be defective with a perfect instrument. He alleged further that said piano was not a high-grade or perfect piano in every respect, but that the same was inferior, defective, and practically worthless, by reason of inferior materials and poor workmanship used in its construction; that the fall board, keys, pedals, lyre and other parts of the piano failed and refused to operate in the performance of their functions. He alleged a pretended effort on the part of the defendant company to correct the imperfections in the instrument, but that in attempting to so remedy the defects, it had utterly failed and had supplied parts which were not only misfits and utterly useless for the purposes intended, but were of a different color and finish from the rest of the piano purchased, and that plaintiff had been "swindled and cheated out of $700," for which he prayed judgment, also for $100 alleged to have been paid in rental for another piano.

Defendant, after general demurrer, answered, admitting the trade, price, and terms as pleaded by plaintiff, but denied that it made, through its agent, any warranties whatever. It further stated that said piano was a high-grade piano in every respect; that it was made of good material and that the tone, workmanship, action, and finish were all excellent, and denied that said piano was inferior or defective in any respect, or that the same was worthless. It further denied that said piano at any time failed to answer the purpose for which it was desired by the plaintiff, and denied that it was necessary for the plaintiff to rent a piano for use on account of any defects contained in that sold by the defendant to plaintiff. Further answering, the defendant pleaded that the contract between the plaintiff and defendant was in writing, and that the only warranty given was one from the manufacturers as per their catalogue. That the plaintiff knew and well understood that the defendant company was not the manufacturer of the piano, but was merely the agency of the manufacturers for the sale of said piano, and that the defendant did not undertake on its own responsibility and in its own behalf to make any warranty whatever. It denied that the defendant, through its said agent, had made any warranty as pleaded by plaintiff, and in its answer defendant set out what purported to be the warranty alleged to have been issued by the manufacturers and included in their catalogue, which warranty, omitting formal parts, is as follows:

"We hereby fully warrant Vose & Sons' piano No. 68854 for the term of five years from date except against the effects of extreme heat, cold, or dampness. Should the instrument with proper care prove to be defective in material, or workmanship during the time named, we agree to put the same in good repair at our factory or replace it with another of the same value. The presence of rust on the metal parts of this piano is absolute proof that the instrument has been affected by extreme dampness and in such a case we will not be responsible for damage to the interior or exterior of the piano resulting therefrom."

Defendant further attempted to interplead the manufacturers and prayed that in case any judgment should be adjudged against it that it have judgment over against said manufacturers in said amount. But inasmuch as the manufacturers, a foreign corporation, were not made parties to this suit, and no exception was taken to the action of the court with reference thereto, it is not necessary to further notice this part of defendant's answer.

In his first supplemental petition plaintiff, in reply to that portion of defendant's answer, alleging a written warranty from the manufacturers, denied that there was any written contract made by and between the plaintiff and the defendant specifying, or undertaking to specify, the terms of the warranty of said piano, but the only warranty made was a verbal one by the agent aforesaid; that said agent promised to send plaintiff a written warranty embodying the terms of the verbal warranty, and stated that the manufacturers warranted all of its pianos to the defendant fully and to the same extent that said agent warranted the instrument in question to the plaintiff; that said plaintiff had never seen the catalogue of the manufacturers and knew nothing of any warranty therein contained, but relied upon the statements, representations, and warranties given by the defendant through its agent, and the promise to send him a written warranty covering the terms verbally agreed upon, but that no such written warranty had ever been delivered to plaintiff.

In its first supplemental answer defendant denied the material allegations contained in plaintiff's first supplemental petition, and further pleaded that if said agent made any other warranty or representation to plaintiff, except those contained in the warranty of the manufacturers, that in doing so he exceeded his authority, and that it was not thereby bound.

In his second supplemental petition plaintiff pleaded that if it should be determined that in making the representations pleaded by plaintiff in his original petition, said agent of the defendant was acting without any actual or express authority, that in so doing he was acting within the apparent scope of his authority, and that the defendant should be bound.

The cause was tried before the court without the aid of a jury, and judgment was rendered for plaintiff against defendant in the sum of $675, with costs of suit, from which judgment the defendant appeals.

The court filed his findings of fact as follows:

"(1) That about August 31, 1913, the plaintiff bought of the defendant a certain Vose & Sons piano, at an agreed price of $675, $75 of which was paid by delivering a secondhand piano to defendant, $100, in cash, and the balance in notes, which were subsequently paid by plaintiff.

"(2) That the defendant acting through its agent and salesman, as an inducement to plaintiff to purchase said piano, represented that same was a high-grade, first-class instrument and perfect in every respect, including material, workmanship, tone, action and finish. That plaintiff believed such representations and, relying on same, bought said piano.

"(3) Defendant's said salesman, at the time also stated to plaintiff that his company would guarantee said piano to be such as is represented above, and that it would furnish plaintiff a written guaranty to that effect.

"(4) I find that the piano in question was not such as it was represented to be, as aforesaid, but that it was defective and imperfect in many material respects, and was practically useless and valueless as a piano.

"(5) At the time he purchased the piano in question plaintiff signed an order to defendant for the same, in which order, in addition to terms, price, and other stipulations, are contained the following provisions: 'The instrument to be fully warranted as per catalogue,' and 'This order is subject to your approval, contains all agreements concerning this sale, and is not subject to countermand.' The notes signed by defendant, and referred to above, each contains the following stipulation, on the upper margin, in red ink and large type, the words, 'No agreement with salesman valid except that contained in this obligation,' and in the body of each note, 'It is further understood and agreed that the notes and mortgage given by me this date contain all contracts and agreements between Jesse French Piano & Organ Company and myself, and that no salesman's contract, written or verbal, is binding on Jesse French Piano & Organ Company except that printed or written on the face of this note.'

"(6) No written guaranty was ever delivered to the plaintiff, and neither the order, notes, or mortgage contained any guaranty or stipulations in reference thereto other than those set out above, nor was the catalogue referred to produced or introduced in evidence on the trial hereof, showing what was meant by the recitation, 'This instrument to be fully warranted as per catalogue,' nor was it shown whether reference was made to warranty given by the manufacturer to defendant, or by defendant to plaintiff.

"(7) I find that the representations so made by defendant's salesman to the plaintiff, as inducement to him, to purchase said piano, were honestly made, but that same were false, and misled the plaintiff and induced him to purchase said piano, and that thereby the plaintiff was damaged in the sum of $675."

The only assignment attacking the court's findings is the tenth, which is as follows:

"The court erred in its findings of fact that the plaintiff was induced to purchase the piano by the representations of the defendant's salesman, which he finds were false, and misled the plaintiff and induced him to purchase the piano, and that the plaintiff was damaged by such false representations in the sum of $675. This action was not brought for damages for a false representation. No false representations are charged in the petition or attempted to be proven. The issue of fraud is not made in the pleadings, and the court erred in rendering its judgment for damages for a fraud which is neither alleged nor proven."

[1] We think the appellant has misinterpreted the purpose and purport of plaintiff's petition. As we construe plaintiff's pleadings at least upon one phase therein set out, they constitute an action sounding in fraud and deceit and charging a tort perpetrated by defendant's agent acting within the scope or apparent scope of his authority. The case seems to have been tried upon this theory, and the trial court adopted this theory, which seems to be supported by the evidence.

"Fraud is defined to be any act, omission, or concealment, which involves a breach of legal duty, trust, or confidence justly reposed, and is injurious to another, or by which an undue and unconscientious advantage is taken of another; and it may be collected and inferred from the nature and circumstances of the transaction, in which it is alleged as being an imposition or an advantage taken of other persons not parties to it." Kellum v. Smith, 18 Tex. 835.

Fraud in law arises from such acts or contracts as, though not originating in any actual evil design or contrivance to perpetrate a positive fraud upon other persons, are yet, by their tendency to deceive or mislead other persons, or to violate private or public confidence, or to impair or injure the public interest, deemed equally reprehensible with positive fraud, and therefore are prohibited by law as within the same reasons as acts done malo animo. A. Peiser & Co. v. Peticolas, 50 Tex. 638, 32 Am. Rep. 621.

In action for deceit, it is not necessary to aver or prove that defendant knew, at the time he made false representations, that they were false; it is sufficient to allege and prove that they were false in fact, and that plaintiff believed and relied thereon, and was induced thereby to act to his prejudice. McCord Collins Co. v. Levi, 21 Tex. Civ. App. 109, 50 S. W. 606; Jesse French Piano & Organ Co. v. Nolan, 38 Tex. Civ. App. 395, 85 S. W. 821; Henderson v. Railroad Co., 17 Tex. 560, 67 Am. Dec. 675; Davis v. Driscoll, 22 Tex. Civ. App. 14, 54 S. W. 43.

Though fraud is not alleged eo nomine, still where facts are alleged which constitute fraud, it is not necessary to charge fraud as a conclusion. Storer v. Lane, 1 Tex. Civ. App. 250, 20 S. W. 852; Carter v. Carter, 5 Tex. 93.

Where a party states facts in his pleadings, from which, if proven, the court must infer fraud as a legal consequence, he need not allege fraud specifically. Mussina v. Goldthwaite, 34 Tex. 126, 7 Am. Rep. 281.

[2] As will be seen from the statement heretofore given of the plaintiff's allegations, he made averments, which, if true, would entitle him to relief from the contract made. The plaintiff alleged that the agent alleged to have made these misrepresentations as to material facts was duly authorized by the defendant company so to do, and the court has found as a matter of fact that said agent did make said representations, and that the same were false, though innocently made,

and that plaintiff relied thereon and was induced thereby to purchase the piano, and that he paid the consideration therefor in the sum alleged, and has found further that the piano in question was defective and imperfect in many material respects, and was practically useless and valueless as a piano.

"The liability of the principal for the agent's false fraudulent representations, rests upon the same ground as his liability for other torts of the agent. For such false representations as he has expressly authorized, he is, of course, liable. But he is liable, also, for the agent's false or fraudulent representations made in the course of the employment, and within the scope of the authority, although they were made without his knowledge or consent, or even in violation of his express instructions." Mechem on Agency, § 743.

"When a principal authorizes an agent to do a certain thing, he is answerable for and bound by the acts and representations of the agent in accomplishing that end, even though the agent is guilty of fraud in bringing about the result. Having given such authority, the principal is responsible for the fraudulent as well as the fair means used by the agent, if they are in the line of accomplishing the object of agency. Having put the agent in a position where he may perpetrate a fraud upon innocent third parties, the principal will not be allowed, as against such third parties, to retain the fruits of the fraud and defeat a claim of reparation by saying that he justified the end, but not the means used by the agent. Conceding that the principal is innocent of any active fraud, yet, when a case arises that he or an innocent third party must suffer by the fraud of the agent, the principal who conferred authority upon the agent must suffer the loss rather than the innocent third party." Id. footnote p. 585.

"The party injured by the agent's fraud, if he desires to take the initiative, has ordinarily his choice of three remedies: (a) He may promptly restore what he has received under the contract, rescind the contract, and recover what he has parted with in pursuance of it; or (b) he may retain what he has received, and bring his action for the fraud practiced upon him; or (c) he may retain what he has received, and, waiving the fraud, bring his action, based upon the contract, for damages sustained by reason of its breach." Id. § 744.

In this case plaintiff has elected to pursue the second remedy hereinabove enumerated, and we believe he was authorized so to do. If the piano was worthless as the court found, and as the evidence seems to sustain, it is not necessary for him to return the same to the defendant, or even offer to return it, in order to entitle him to recover the full purchase price. Wintz v. Morrison, 17 Tex. 372, 67 Am. Dec. 658; Bolt v. Bank, 179 S. W. 1119, by this court, not yet officially reported.

[3] But the appellant urges that there was a contract of warranty in writing, which warranty was made by the manufacturer and contained in their catalogue. But the court finds that no such warranty was ever delivered by the defendant or any one else to plaintiff, nor did the order, notes, or mortgage contain any warranty or stipulation in reference thereto, other than the mere reference set out in paragraph 5 of his findings, and that no written warranty was introduced in evidence, nor catalogue alleged to contain said written warranty. And while under its eighth assignment, appellant complains of the exclusion of the testimony of T. H. Wear, the salesman who made the contract with plaintiff, by whom the defendant offered to prove that the sale was made upon the warranty of the manufacturers, and that the catalogue referred to in defendant's answer was issued by said manufacturers, and that the warranty set forth in the answer was that contained in the catalogue, yet we believe the court did not err in excluding any parol testimony as to the contents of said catalogue, or of the written warranty alleged to be therein contained, in the absence of the proper predicate accounting for the nonproduction of said catalogue and warranty.

[4] Therefore, the assignments complaining of the action of the court in permitting the plaintiff to prove the terms of the alleged verbal misrepresentations of the agent, which it was claimed constituted an attempt to vary by parol testimony the terms of the written contract thereafter entered into, cannot be sustained, since we have no evidence in the record as to what said written contract was, or even that there was a written contract of warranty. Though defendant pleaded the written warranty he made no proof thereof.

We are of the opinion that no prejudicial error is shown, and that the judgment of the trial court should be in all things affirmed; and it is so ordered.